**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KINGSLEY PENIANAH, | : | |
| | : | Civil Action No. 09-0728 (JAP) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| OCEAN COUNTY DEPARTMENT OF | : | |
| CORRECTION, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Kingsley Penianah
Hudson County Correctional Center
35 Hackensack Avenue
Kearny, NJ 07032

**PISANO**, District Judge

Plaintiff Kingsley, a prisoner confined at Hudson County Correctional Center in Kearny, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he was previously housed at Ocean County Jail, beginning May 20, 2008.  While there, on August 9, 2008, another prisoner punched Plaintiff in the jaw.  Plaintiff reported the incident to the officer on duty and the other prisoner was removed from Plaintiff's tier.

Plaintiff alleges that fifteen minutes later, two other prisoners identified themselves to him as members of the "Blood" gang and attacked him.  Plaintiff alleges that this incident left him with broken facial bones and facial injuries requiring stitches.

Plaintiff alleges that unknown correctional officials unlawfully placed him in a life-threatening environment, because they did not segregate gang members from other prisoners, like himself, who are not gang members.

Plaintiff names as defendants the Ocean County Department of Corrections and one to fifty unknown individuals responsible for the housing policy that does not segregate gang members.  He does not state what relief he seeks.

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in forma pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in forma pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;

the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court then applied these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not

4

> merely parallel conduct that could just as well be
> independent action.
>
> The need at the pleading stage for allegations
> plausibly suggesting (not merely consistent with)
> agreement reflects the threshold requirement of Rule
> 8(a)(2) that the "plain statement" possess enough heft
> to "sho[w] that the pleader is entitled to relief." A
> statement of parallel conduct, even conduct consciously
> undertaken, needs some setting suggesting the agreement
> necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an
> account of a defendant's commercial efforts stays in
> neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a

claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Therefore, after Iqbal, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated. The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions. Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief." In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief. A complaint has to "show" such
an entitlement with its facts. See Phillips, 515 F.3d
at 234-35. As the Supreme Court instructed in Iqbal,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,

the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 2009 WL 2501662, 5 (3d Cir. August 18,

2009) (citations omitted).

    Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances. ... If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

    Rule 20(a)(2) controls the permissive joinder of defendants

in pro se prisoner actions as well as other civil actions.

Persons ... may be joined in one action as defendants
if:
    (A) any right to relief is asserted against them
jointly, severally, or in the alternative with respect
to or arising out of the same transaction, occurrence,
or series of transactions or occurrences; <u>and</u>
    (B) any question of law or fact common to all
defendants will arise in the action.

(emphasis added). <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252

Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th

Cir. 2007).

    Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34

(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u>

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg
County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [<u>Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 404 (1997).]

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

<u>Natale</u>, 318 F.3d at 584 (footnote and citations omitted).

IV.  <u>ANALYSIS</u>

Plaintiff does not state whether, at the time of the events complained of, he was a convicted and sentenced prisoner, a pre-trial detainee, or a civil detainee such as an immigration detainee.

Civil detainees, pretrial detainees and convicted but unsentenced prisoners are protected by the Due Process Clause of the Fourteenth Amendment and convicted prisoners are protected by

10

the Eighth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535,
n.16, 545 (1979); City of Revere v. Massachusetts General
Hospital, 463 U.S. 239, 244 (1983); Hubbard v. Taylor, 399 F.3d
150 (3d Cir. 2005); Natale v. Camden County Correctional
Facility, 318 F.3d 575, 581 (3d Cir. 2003); Fuentes v. Wagner,
206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County
Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346
n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

Analysis of whether a detainee or unsentenced prisoner has
been deprived of liberty without due process is governed by the
standards set out by the Supreme Court in Bell v. Wolfish, 441
U.S. 520 (1979).  Hubbard, 399 F.3d at 157-60, 164-67; Fuentes,
206 F.3d at 341-42.

In evaluating the constitutionality of conditions
or restrictions of pretrial detention that implicate
only the protection against deprivation of liberty
without due process of law, we think that the proper
inquiry is whether those conditions amount to
punishment of the detainee.  For under the Due Process
Clause, a detainee may not be punished prior to an
adjudication of guilt in accordance with due process of
law. ...

Not every disability imposed during pretrial
detention amounts to "punishment" in the constitutional
sense, however.  Once the government has exercised its
conceded authority to detain a person pending trial, it
obviously is entitled to employ devices that are
calculated to effectuate this detention. ...

A court must decide whether the disability is
imposed for the purpose of punishment or whether it is
but an incident of some other legitimate governmental
purpose.  Absent a showing of an expressed intent to
punish on the part of detention facility officials,

11

that determination generally will turn on "whether an
alternative purpose to which [the restriction] may
rationally be connected is assignable for it, and
whether it appears excessive in relation to the
alternative purpose assigned [to it]."  Thus, if a
particular condition or restriction of pretrial
detention is reasonably related to a legitimate
governmental objective, it does not, without more,
amount to "punishment."  Conversely, if a restriction
or condition is not reasonably related to a legitimate
goal--if it is arbitrary or purposeless--a court
permissibly may infer that the purpose of the
governmental action is punishment that may not
constitutionally be inflicted upon detainees <u>qua</u>
detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives.  441 U.S.

at 539 n.20.  Nor are grossly exaggerated responses to genuine

security considerations.  <u>Id.</u> at 539 n.20, 561-62.

The Eighth Amendment to the United States Constitution,

applicable to the individual states through the Fourteenth

Amendment, prohibits the states from inflicting "cruel and

unusual punishments" on those convicted of crimes.  <u>Rhodes v.</u>

12

Chapman, 452 U.S. 337, 344-46 (1981).  Under the Eighth
Amendment, prison officials have a duty to provide humane
conditions of confinement, including adequate food, clothing,
shelter, medical care, and personal safety.  Farmer v. Brennan,
511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d
Cir. 1992).  Accordingly, prison officials must take reasonable
measures "to protect prisoners from violence at the hands of
other prisoners."  Farmer, 511 U.S. at 833 (1994) (internal
quotations omitted).  "Being violently assaulted in prison is
simply 'not part of the penalty that criminal offenders pay for
their offenses against society.'"  Id. at 834 (quoting Rhodes v.
Chapman, 452 U.S. 337, 347 (1981)).

    To successfully state a claim for violation of the Eighth
Amendment, an inmate must satisfy both the objective and
subjective components of such a claim.  The inmate must allege a
deprivation which was "sufficiently serious," and that in their
actions or omissions, prison officials exhibited "deliberate
indifference" to the inmate's health or safety.  See Farmer, 511
U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v.
Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

    In the context of a failure-to-protect claim, the inmate
must show that he is "incarcerated under conditions posing a
substantial risk of harm," Farmer, 511 U.S. at 833, and that
prison officials knew of and disregarded the excessive risk to

13

inmate safety, Id. at 837.  "A pervasive risk of harm may not
ordinarily be shown by pointing to a single incident or isolated
incidents, but it may be established by much less than proof of a
reign of violence and terror."  Riley v. Jeffes, 777 F.2d 143,
147 (3d Cir. 1985).  "Whether ... prison official[s] had the
requisite knowledge of a substantial risk is a question of fact
subject to demonstration in the usual ways, including inference
from circumstantial evidence, and a fact finder may conclude that
... prison official[s] knew of a substantial risk from the very
fact that the risk was obvious."  Farmer, 511 U.S. at 842.
Deliberate indifference is more than a mere lack of ordinary due
care, however; it is a state of mind equivalent to a reckless
disregard of a known risk of harm.  Farmer, 511 U.S. at 834.

    Plaintiff has failed to state a claim under either the
Fourteenth Amendment or the Eighth Amendment standard.

    With respect to the due process standard of the Fourteenth
Amendment, Plaintiff has failed to allege facts suggesting that
his housing assignment was intended to "punish" him.  Plaintiff
has not alleged any history of violence at the institution that
might have informed corrections officials' creation of a
classification and housing policy.  Plaintiff has not alleged
that corrections officials were aware of particular inmates' gang
affiliations (or absence of gang affiliations).  He has failed to
allege any single incident, during the three months he was

14

confined prior to this incident, of gang members violently assaulting non-gang members. The facts presented in the Complaint indicate an isolated incident of violence insufficient to establish a due process violation.

Nor do the factual allegations suggest an Eighth Amendment violation. Applying Farmer to the instant action, the first question is whether Plaintiff has alleged facts showing that inmates, or Plaintiff in particular, faced a substantial risk of assault. The second question is whether Plaintiff has alleged facts from which it could be inferred that defendants were aware of and disregarded that risk.

The Complaint is deficient with respect to both elements. Plaintiff does not allege any facts showing that he, or other non-gang members, faced a substantial risk of assault from gang members. In addition, Plaintiff does not allege facts which suggest that corrections officials were informed of a specific risk of harm to himself or other inmates, Nami, 82 F.3d at 67-68; Young, 960 F.2d at 362, or that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented" or otherwise obvious to them. Farmer, 511 U.S. at 842; accord Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F.Supp. 193, 199-200 (D.N.J. 1997). Cf. Richardson v. O'Sullivan, 99 F.3d 1142, 1996 WL 590552 (7th Cir.

1996) (bald assertion of failure to protect from gang members does not state a claim for a constitutional violation).

Moreover, any negligence in the classification and housing policy is insufficient to establish a violation of the Eighth Amendment; here, however, Plaintiff has failed to allege facts sufficient even to state a claim for negligence. Davidson v. Cannon, 474 U.S. 344, 345-48 (1986) (finding that prison officials' negligent failure to heed prisoner's notification of threats from another inmate, followed by an assault, is not a deprivation of constitutional rights); see also Schwartz v. County of Montgomery, 843 F.Supp. 962 (E.D. Pa.), aff'd, 37 F.3d 1488 (3d Cir. 1994) (stating that corrections officers' failure to observe institutional policies regarding the supervision of dangerous inmates constitutes negligence, which cannot support a § 1983 action for violation of the Eighth or Fourteenth Amendments). To the contrary, Plaintiff alleges that when he advised corrections officials that he was punched in the jaw, the offending prisoner was immediately removed from the tier.

The Complaint shall be dismissed for failure to state a claim.

## V.   CONCLUSION

For the reasons set forth above, the Complaint shall be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for

failure to state a claim.[1]  Because it is conceivable that Plaintiff could file an amended complaint sufficient to overcome the deficiencies noted herein, he will be granted leave to move to reopen.  Any such motion must be accompanied by a proposed amended complaint.[2]

    An appropriate order follows.


                      /s/ Joel A. Pisano
                      Joel A. Pisano
                      United States District Judge

Dated: October 7, 2009

---

[1] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open in accordance with the court rules.

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.